## 520

24 C.C.P.A.(Patents)

### In re HALLER et al.

#### Patent Appeal No. 3664.

Court of Customs and Patent Appeals.
Feb. 1, 1937.

E. F. Wenderoth, of Washington, D. C. (A. Ponack, of Washington, D. C., of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

The appellants have here appealed from a decision of the Board of Appeals of the United States Patent Office, in which the decision of the Primary Examiner, rejecting appellants' claims in an application for a patent relating to a process of impregnating materials, was affirmed.

In this appeal there are involved only three claims, which read as follows:

"3. The process of impregnating material which comprises bringing the material to be impregnated into contact with an aqueous solution of the product resulting from the reaction of one molecular proportion of a primary aromatic amine in the presence of approximately at least an equivalent proportion of a strong mineral acid, with more than one molecular proportion of a formaldehyde compound and thereafter treating the impregnated mate-

rial with an agent which substantially eliminates the mineral acid.

"4. The process of impregnating material which comprises bringing the material to be impregnated into contact with an aqueous solution of the product resulting from the reaction of one molecular proportion of aniline in the presence of at least an equivalent proportion of a strong mineral acid, with more than one molecular proportion of a formaldehyde compound and thereafter treating the impregnated material with an agent which substantially eliminates the mineral acid."

"16. The process of impregnating material which comprises bringing the material to be impregnated into contact with an aqueous solution of the product resulting from the reaction of one molecular proportion of aniline in the presence of approximately at least an equivalent proportion of a strong mineral acid with more than one proportion of a formaldehyde compound, then treating the impregnated material with an agent which substantially eliminates the mineral acid, and finally washing and drying the product."

The references cited are:
Kienle, 1,812,749, June 30, 1931.
Baekeland, 949,671; February 15, 1910.
Baekeland, 954,666, April 12, 1910.
Baekeland, 1,085,100, January 27, 1914.
Behler (Ger.), 335,984, April 21, 1921.

While the foregoing references were cited, the decision of the examiner relating to the prior art was based upon the patent to Baekeland, No. 949,671, of February 15, 1910, and the decision of the board was likewise based upon this reference, so it will not be necessary for us to discuss any reference except the said Baekeland patent, in view of our conclusion.

The alleged invention is sufficiently described in the claims.

Two grounds of rejection were found by the examiner, only one of which need here be considered inasmuch as we agree with the board and the examiner as to the second ground of objection. This second ground of objection was that the claims here involved lack patentability in view of the patent to Baekeland, No. 949,671. This patent states:

"According to my invention there is produced synthetically within a fibrous body, and around the fibers or bundles of fibers constituting the same, a hard condensation product of phenols and formal-

dehyde. By the treatment of wood according to my method a soft or inferior wood can be transformed, either superficially or throughout its mass, into a material similar in character to the best grades of hard wood, and resembling mahogany, ebony, and the like.

"The invention is based on the known fact that phenols and formaldehyde· react under suitable conditions to yield solid condensation products. For instance ordinary phenol is capable of reacting with formaldehyde to produce a condensation product. This reaction is accelerated by the application of heat and by the presence of so-called condensing agents, as for instance mineral or organic acids, such as hydrochloric or tartaric acids, salts, as for example zinc chlorids and the like. * * *

"If for instance hydrochloric acid is employed as a condensing agent the impregnated material may be afterward soaked in water or in a slightly alkaline solution until the acid is removed or neutralized. * * *

"The wood may be dried or otherwise treated before being subjected to the indurating treatment; and after such treatment it should be further dried to expel the water which was formed during the reaction or which may have been introduced with the formaldehyde solution."

The board, in discussing the decision of the examiner, states:

"The claims are further refused on the ground that the method steps outlined were conventional in the artificial resin art as illustrated by the Baekeland patents and therefore there was no invention in applying this expedient to the particular resin here in question.

"The Baekeland patent No. 949,671 seems to be the only one relied upon in the rejection. This patent describes the reaction of phenols and formaldehyde in a suitable condition to yield a solid condensation product in the presence of condensing agents and refers to hydrochloric acid as an example of such agent. It is stated that an alcohol soluble product may be obtained if the formaldehyde be not used in excess of the molecular proportion. It is also stated the condensing agent may be washed out after the reaction is complete. If hydrochloric acid is employed as the condensing agent, the impregnated material can be afterwards soaked in water or in a slightly alkaline solution till the acid is removed or neutralized.

"While the examiner concedes that the specific resin described may be novel per se, yet he is of the opinion that each improvement in an artificial resin or method of producing the same does not justify the grant of a patent for each of the conventional uses thereof. In other words, granting that the specific resin is novel to employ it in an old process for impregnating material does not present patentable merit inasmuch as the differences as far as the product is concerned are inherent in the resin per se and the claims directed to the specific resin have evidently been allowed in appellants' patent No. 1,939,691."

This ground of rejection was expressly approved by the board. Appellants strenuously contend· that the process disclosed in the Baekeland patent is not similar to the process set out in the involved claims, in that in appellants' process the reaction between the substances named in the claims takes place *before* impregnation of the material, while in Baekeland the reaction takes place . *after* impregnation. This is true; the Baekeland patent states: "In order to carry my method into effect I impregnate the wood or other fibrous material with the reacting bodies *before the reaction has occurred,* and I so arrange the conditions that the reaction yielding the condensation product occurs *within the fibrous material.* * * *" (Italics ours.)

However, the steps of eliminating the acid from the impregnated material set out in all of the claims, and the additional step of washing and drying set out in claim 16, are substantially the same as those disclosed by Baekeland. We are of the opinion that the mere fact that impregnation of the material in appellants' process takes place after the reaction occurs between the substances named in the claims, while in the Baekeland process the reaction occurs after impregnation, does not lend patentability to the claims. It appears to us that appellants have merely used a product invented by them, and for which they have received a patent, and have impregnated material with such product, followed by steps of elimination of acid, washing, and drying disclosed by Baekeland. We can see nothing inventive in merely bringing material to be impregnated into contact with appellants' new product. While the decisions of the Patent Office tribunals are

not very clear upon this point, we construe them to mean that, regardless of any differences between appellants' process and that of the reference Baekeland, there was no invention involved in the use of appellants' novel product, followed by conventional steps to eliminate the mineral acid, washing, and drying.

We, therefore, find no error in the decision of the Board of Appeals, and it is affirmed.

Affirmed.